JUSTICE TRIEWEILER
concurring in part and dissenting in part.
¶21 I concur with the majority’s conclusion that the District Court erred when it awarded summary judgment to Madison County and the other plaintiffs. I dissent from the majority’s conclusion that the defendant State of Montana is entitled to judgment as a matter of law. ¶22 Pursuant to § 15-1-211(8), MCA, the director of the Department of Revenue is designated by law as the agent of the State of Montana authorized to settle claims against any taxpayer for taxes due pursuant to state law. That section provides in part that:
(a) The director of revenue or the director’s designee is authorized to enter into an agreement with any taxpayer relating to the taxpayer’s liability with respect to a tax administered by the department for any taxable period.
(b) An agreement under the provisions of subsection (8)(a) is final and conclusive, and, except upon a showing of fraud, malfeasance, or misrepresentation of a material fact:
(i) the agreement may not be reopened as to matters agreed upon or be modified by any officer, employee, or agent of this state
¶23 Implicit from § 15-1-211(8), MCA, is the director’s authority to settle tax claims on any terms he or she deems appropriate.
¶24 Pursuant to that statutory authority, the Director for the Department of Revenue executed a three-party settlement agreement to which Cyprus Mines Corporation, the taxpayer, and Madison County, the primary beneficiary of the claimed taxes, were parties. That agreement provided in relevant part that:
Within ten (10) working days from the date Cyprus receives a fully executed copy of this Agreement, Cyprus shall deliver two checks, one to Madison County, Montana, in the amount of $4,432,584.00, and one to the State Treasurer of the State of Montana in the amount of $67,416.00.
The payments above described shall be in consideration for the full release, acquittal and discharge of all deficiency assessments and claims of any kind including interest by the Department against Cyprus for RITT, and net proceeds taxes for calendar/pro *454 duction years 1980 through 1987 inclusive, subject to the provisions of § 15-1-211(8), MCA.
¶25 Why Madison County was a party to the settlement agreement is not clear from the face of the agreement. Furthermore, the agreement does not, on its face, as noted by the majority, explain why the settlement proceeds were divided and to be delivered as indicated. I conclude, therefore, that Madison County’s involvement with the agreement, together with the terms of the agreement which provide for the distribution of the settlement proceeds, create an intrinsic ambiguity and that the intent of the parties could only have been determined by evidence in addition to the contract itself. The need for extrinsic evidence to explain the intent of the parties in circumstances such as these is plainly anticipated by § 28-2-905(2), MCA, which makes an exception to the rule prohibiting parol evidence when such is necessary to explain an intrinsic ambiguity.
¶26 I would therefore remand this case to the District Court for evidentiary proceedings at which the intent of the parties can be determined.
¶27 I also disagree in two significant respects with the majority’s rationale for its conclusion.
¶28 First, I disagree with the majority’s conclusion that the state has any right to collect equalization aid payments pursuant to § 20-9-360, MCA. The majority correctly notes that the settlement among the parties pertained to Cyprus Mine Corporation’s tax liabilities for the years 1980 through 1987. Section 20-9-360, MCA, which pertains to state equalization aid to the public schools of Montana, was not enacted until 1989 and made no provision for retroactive application. Section 1-2-109, MCA, provides that “[n]o law contained in any of the statutes of Montana is retroactive unless expressly so declared.”
¶29 The State has argued, and the maj ority has agreed, that the settlement proceeds are tax revenue because paid in satisfaction of a claim by the State for taxes due. On that basis, the majority has concluded that the revenue must be disbursed as all other tax revenue. However, the State’s and the majority’s willingness to trace the source and nature of the settlement proceeds inconsistently ends there. The proceeds could only be revenue for the years during which the State claimed it was entitled to payment from Cyprus. That was the years 1980 through 1987, and during those years the State was *455 not entitled to payment for state school equalization aid payments pursuant to § 20-9-360, MCA.
¶30 I furthermore disagree that there is any significance to the fact that “[t]he question of how to distribute a property tax settlement which states a dollar amount without allocation based on value or years had been addressed, as OPI argued below, in 41 Att’y Gen. Op. No. 67.”
¶31 Legal issues are not answered for courts by the opinions of attorneys general. Those opinions are completely irrelevant in courts of law. As we noted in O’Shaughnessy v. Wolfe, (1984), 212 Mont. 12, 16-17, 685 P.2d 361, 363, an attorney general’s opinion may bind other government attorneys pursuant to § 2-15-501(7), MCA, however, it has no binding effect on the courts. We gave the following explanation:
Courts never look to administrative interpretation when the language [of a statute] is clear beyond cavil. To hold otherwise would be to say that administrators and executive officials, interpreting the effect of statutes, could undermine the enactments by official action and nullify otherwise validly adopted laws. Thus, the legislative, and even the judicial power would pass to the executive, at least in the negative or vetoing sense.
O’Shaughnessy, 212 Mont. at 17, 685 P.2d at 364.
¶32 In summary, I conclude that whatever the county treasurer’s normal obligations for collection and disbursement of property tax revenue, those obligations can be altered by an agreement entered into among the obligated taxpayer, the county, and the director for the department of revenue. Whether those obligations were altered based on the settlement agreement which is the subject of this litigation is not clear. Therefore, I would vacate the District Court’s order of summary judgment in favor of the plaintiffs and remand to the District Court for an evidentiary hearing at which extrinsic evidence could be presented, following which the District Court could resolve the issue regarding the parties’ intent.
¶33 I dissent from the majority’s conclusion that the State of Montana is entitled to judgment as a matter of law.